# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## WILLIAM ALLEN, ET AL. V. WILLIAM LLOYD

**Direct Appeal from the Circuit Court for Davidson County**
**No. 97C-1333      Thomas W. Brothers, Judge**

---

**No. M1999-01739-COA-R3-CV - Decided June 16, 2000**

---

Nine prisoners brought a suit in forma pauperis against an employee of the Department of Correction for interfering with Muslim congregational prayers. The trial court dismissed their complaint for failure to comply with Tenn. Code. Ann. § 41-21-805 (requirement of affidavits detailing all previous lawsuits filed by plaintiffs) and Tenn. Code. Ann. § 41-21-806 (requirement that administrative remedies be exhausted before filing suit). We affirm on the basis of the plaintiffs' failure to comply with Tenn. Code. Ann. § 41-21-805.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**

CANTRELL, P.J., M.S., delivered the opinion of the court, in which KOCH and CAIN, JJ. joined.

William Allen, Yusuf El-Amin, Kirk Freeman, Daniel Muhammad, and R. W. Farid Abd Al Rafi, Nashville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Terri L. Bernal, Assistant Attorney General, Nashville, Tennessee, for the appellee, William Lloyd

## OPINION

### I. PRAYER AND PRISON

William Allen was one of nine prisoners in Unit 6 of the Riverbend Maximum Security Institution (RMSI) who followed the tenets of orthodox Islam. As an important part of the their religious practice, the nine tried to gather together at least once a day for brief congregational prayers.

On March 1, 1997, they were praying in the multi-purpose room of the Unit 6 "B-Pod" when William Lloyd, the Unit Manager, entered the room, and allegedly told them they could not use that room for prayer. The proof showed that the room had been used by other prisoners for Christian bible study, as well as for secular pursuits like practicing musical instruments, playing cards and

dominoes, and watching television, on a "first-come, first-served" basis. The record indicates that the television was out for repair at the time of the incident.

Mr. Allen and his fellow worshippers apparently chose another location for prayers after this incident. On March 27, they had just completed their mid-day prayers at one end of the basketball court in the exercise yard, when Mr. Lloyd sent another officer to tell them that the court was for basketball only.

On April 2, nine inmate grievances were filed against Mr. Lloyd, claiming that he had interfered with the grievants' rights to practice their religion. They asked that Mr. Lloyd be given a psychological exam, counseling, and a written reprimand. They also asked that prison officials designate a place for Muslim prayer. Bill Smith, the Chairman of the Grievance Board, combined the grievances for a single hearing, pursuant to Department of Correction Policy #501.01(VI)(E)(3).

On April 9, Mr. Smith issued a written response to the grievance: "Now that TV is back in multi-purpose room, Warden Bell would prefer this area not be used for prayer. Warden feels that basketball court is acceptable as long as (sic) doesn't interfere with games." According to Mr. Allen's affidavit, none of the grievants sought an appeal of the grievance process, because they felt that they had achieved a favorable decision at this stage of the process.

On April 24, 1997, however, Mr. Allen and the other eight inmates[1] filed a pro se 42 U.S.C. §1983 civil rights complaint against Mr. Lloyd, which named him in his individual capacity only. The plaintiffs claimed that Mr. Lloyd had interfered with the free exercise of their religion, as guaranteed by both the United States and Tennessee Constitutions. They asked for $5,000 each in compensatory damages, and $10,000 each in punitive damages.

On July 10, Mr. Allen personally served Mr. Lloyd with a set of Admissions related to the lawsuit. Mr. Lloyd became angry, and threatened to have Mr. Allen locked up in segregation if he ever approached him about anything again. Mr. Allen filed a grievance about this incident on the same day, asking that a written reprimand be placed in Mr. Lloyd's file, and that he be removed as Unit Manager.

On July 24, the grievance committee's recommended response was "[b]oard agrees that Mr. Lloyd should not have approached grievant in this manner. Board also feels that Mr. Waller [Assistant Warden at RMSI] has addressed this issue with Mr. Lloyd." The Chairman's response

---

[1] Mr. Allen remained the lead plaintiff during the entire course of this lawsuit, but four of the other plaintiffs discontinued their participation after they were transferred to other institutions or released. The names and signatures of the five remaining plaintiffs are found on the Notice of Appeal. The appellate brief was only signed by William Allen, leading the appellee to argue that in accordance with the Rules of Appellate Procedure, "[a]ppellants Muhammed, Freeman, Al Rafi, and El-Amin have presented no issues for review by this court."

was "[a]gree with Supervisor response. Mr. Waller has reviewed incident with Mr. Lloyd. Grievant should contact Mr. Waller if problem persists."

On August 15, 1997, Mr. Allen filed a motion to amend his complaint, which was subsequently granted. This complaint named Mr. Lloyd in both his official and individual capacities. It recited the incident of July 10, as well as claims that Mr. Allen had been subjected to two petty disciplinary write-ups, harassing cell searches and urine tests.

Mr. Allen filed a Motion for Declaratory Judgment on October 16, 1998, asking the trial court to declare that Mr. Lloyd's acts "violated the plaintiffs' rights under Tennessee law and under the First, Eighth, and Fourteenth Amendments of the United States Constitution." On the same day, the defendant filed a Motion to Dismiss.

On June 4, 1999, the trial court ruled on the pending motions, denying the plaintiffs' motion on the ground that under Tenn. Code. Ann. § 20-13-102, no state court has the jurisdiction to hear declaratory judgment actions against the state or a state officer. The court dismissed the complaint upon the defendant's motion, citing the plaintiffs' failure to comply with the mandatory requirements of Tenn. Code. Ann. §§ 41-21-805 and 806. This appeal followed.

## II. DECLARATORY JUDGMENT

Mr. Allen argues that the trial court erred in declining to grant his motion for declaratory judgment. He contends that insofar as he was suing Mr. Lloyd in his individual capacity, Tenn. Code. Ann. § 20-13-102 would not bar the court from granting him a declaratory judgment. But even if, *arguendo*, we accept Mr. Allen's argument, we still do not believe that the appellant is entitled to such a judgment.

Mr. Allen's motion asks for a different form of relief than was requested in his complaint or his amended complaint, and thus amounts to a further amendment of the complaint. At this stage of the proceedings, a party may amend his pleadings "only by written consent of the adverse party or by leave of court." Rule 15, Tenn. R. Civ. P. No such consent or leave of the court was requested.

Further, the grant or denial of a declaratory judgment is within the discretion of the trial court. *Love v. Cave*, 622 S.W.2d 52 (Tenn. Ct. App. 1981); *East Sevier County Utility District v. Wachovia Bank & Trust Co.*, 570 S.W.2d 850 (Tenn. 1978). The declaratory judgment statutes, Tenn. Code. Ann. § 29-14-101, et seq., give the courts some guidance as to the manner in which to exercise their discretion. Tenn. Code. Ann. § 29-14-109 states, "[t]he court may refuse to enter a declaratory judgment or decree where such judgment or decree, if rendered or entertained, would not terminate the uncertainty or controversy giving rise to the proceedings." It does not appear to us that the judgment requested would have had the desired effect, nor that the trial court abused its discretion in refusing to grant it.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Appellee directs our attention to 42 U.S.C.A. § 1997e(a) (effective April 26, 1996) which states "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Tenn. Code. Ann. § 41-21-806 creates a procedural requirement which was designed to further the goal of making sure that an inmate who is filing in forma pauperis has pursued his administrative remedies to a conclusion before enlisting the aid of the courts in resolving a problem:

> (a) An inmate who files a claim that is subject to review by the grievance committee established by the department shall file with the court an affidavit stating the date that the grievance was filed and the date the final decision was received by the inmate with a copy of the final decision from the grievance committee.

Mr. Allen did not file a Tenn. Code. Ann. § 41-21-806 affidavit in the trial court. Instead, he appended to his brief a copy of an affidavit, dated August 17, 1999, that would have met the requirements of the statute if it had been properly filed. For the purposes of this discussion, however, we will ignore this lapse, and examine instead the question of exhaustion of administrative remedies.

Mr. Allen argues that he should not be required to exhaust his administrative remedies, because those remedies are irrelevant to the relief he seeks. He asserts that the committee's response to his first grievance put an end to Mr. Lloyd's attempts to interfere with the practice of Muslim prayer. He was particularly gratified by the "diplomatic" language of the response, which expressed the warden's preference that the multi-purpose room not be used for prayer, but did not forbid such use by the appellants on a first-come, first served basis.

Appellant also declares himself satisfied that the response to his second grievance put a stop to Mr. Lloyd's threats and attempts at intimidation for exercising his First Amendment right to seek redress in the courts. He argues that he is not seeking correction of prison conditions, but damages for Mr. Lloyd's past actions. While it is questionable what quantum of damages can be proven for a single incident of interrupted prayer or for purely verbal threats, Mr. Allen's argument is well-taken, and would perhaps have enabled him to proceed to a trial of that question, if it were not for his failure to comply with the requirements of Tenn. Code. Ann. § 41-21-805.

### IV. TENN. CODE. ANN. § 41-21-805

The Legislature enacted Tenn. Code. Ann. § 41-21-801, et seq. in 1996 to address the problems that arise when state courts are confronted by a flood of taxpayer-funded inmate lawsuits. Tenn. Code. Ann. § 41-21-805 imposes a duty upon inmates who file claims in forma pauperis to submit affidavits documenting in detail their prior history of litigation, before a trial court can rule

on their current claims. Federal statutes impose similar restrictions in federal courts on proceedings in forma pauperis. *See* 28 U.S.C. § 1915.

No such affidavits were filed in this case. After the defendant filed a motion to dismiss based upon non-compliance with Tenn. Code. Ann. § 41-21-805, the five remaining plaintiffs requested that the Department of Correction withdraw $24 from each of their personal accounts, and mail the funds to the Clerk of the Davidson County Courts. They contemporaneously filed a "Notice to the Court of Payment of Filing Fees to the Clerk." The purpose of this move was to waive the right to proceed in forma pauperis and thus to avoid the necessity of filing Tenn. Code. Ann. § 41-21-805 affidavits.

We assume that the gesture of payment by the plaintiffs was actuated in part by a desire to demonstrate the importance they attach to the free exercise of the their religious rights. While this is admirable, there is no indication in the record that the plaintiffs made any inquiry to determine whether payment of $120 into the court would be adequate to cover those costs that are normally borne by the state when a suit is filed in forma pauperis.

The courts of this state normally require the filing of a bond in an amount sufficient to guarantee the payment of costs before a suit can be filed. A pro se litigant would have to pay a $500 cash bond into the court as well as a $37.50 filing fee to file a civil complaint in the Davidson County Circuit Court. We note that on December 20, 1999, the appellants each filed in this court a "Notice of Claim of Exemption from Garnishment" presumably to prevent us from taxing the full amount of court costs from their personal property.

It appears to us that Mr. Allen and his co-plaintiffs still must satisfy the obligations imposed on inmates seeking to proceed in forma pauperis. Since they did not file the affidavits required of indigent inmate plaintiffs by Tenn. Code. Ann. § 41-21-805, their complaint was properly dismissed. Such dismissal is without prejudice to the right to file another lawsuit based upon the same cause of action. *See Eddie Williams v. Warden Ricky Bell*, No. M1999-02124-COA-R3-CV, filed Nashville(Tenn. Ct. App., May 25, 2000).

## V.

The order of the trial court is affirmed. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants, William Allen, Yusuf El-Amin, Kirk Freeman, Daniel Muhammad and R.W. Farid Abd Al Rafi.